Martin, J.
Feebach’s mistake in taking the- void mortgage entitled him, as against Mrs. Ogle, to a rescission of the contract, to a vendor’s lien, or to assert a charge on the *364 land as her separate estate. But we are not aware that either of these remedies is available to his assignee, the plaintiff, against subsequent purchasers. Obviously, he cannot rescind, and if he could his notes would be avoided, and he would take nothing. A vendor’s lien is not assignable. And it seems to us that the mere existence of the indebtedness which might, by proper steps, have been charged on the separate estate, created no lien, and cannot, therefore, entitle the creditor, as against subsequent purchasers, to charge it on the land. It had ceased to be separate estate. And there is here no equity of correction arising from a defective execution of a grant whereby the title failed to pass, and which would be enforceable against subsequent purchasers with notice. The mortgage, as a grant, is simply void and incapable of correction.
It is insisted, however, that, in equity, Mrs. Ogle became a trustee for Feebach for the payment of the notes. This view is supported by the opinion of an eminent author, who bases it on the ground that there was a failure of what was really contemplated by the parties as a consideration. .1 Bishop on Married Women, 600. It appears from the context that the author alludes to the general property of a married woman subject to marital rights at common law.
A grant of such property to the wife casts upon the husband an estate during the joint lives of himself and wife. He alone can accept the conveyance. If it is absolute and unconditional an acceptance is presumed. If it is clogged with a trust (or in any manner conditional) he is put to his election. If he reject it the contract is at once rescinded, and all parties are restored to their original position and rights. If he accept it, the premises granted, including his estate, are charged with the trust. The result in either case is accomplished by his own act. By acceptance, in a case like the present, he gives effect, for his own advantage, to her expressed intention. To hold otherwise would enable him, by his own voluntary act, to enjoy the fruits of his wife’s fraud. We think the opinion of the learned *365 author is sound and consistent with established principles and analogies.
But under our statute the premises in question were the separate property of Mrs. Ogle. The statute gives her sole control over it, and the restraints imposed confer no estate on the husband. She has power to make certain contracts in respect to it,'and to chai’ge it withffhe payment of debts. The invalidity of the mortgage arises solely from her incapacity to make a separate grant. Other considerations affected her relation to her general property at common law. As to it she was incapacitated to contract. And to assume any validity in her mortgage back was to admit the momentary seizin of her husband with its legitimate consequences. We see nothing in the changed condition, in her seizin and powers under the statute, to relieve her from the relation of a trustee.
The deed and mortgage back are dependent parts of one transaction. They evidence an agreement not simply for a lien, but for a reconveyance — a perfect mortgage, with its incidents and cumulative remedies. By mere mistake on the part of Feebach, he accepted the mortgage, regular on its face, but void.
Notwithstanding he had a vendor’s lien and a right to charge the separate estate, there is no inconsistency in his having, and we think he was entitled to have, the ampler remedy of a trust assignable and enforceable against subsequent purchasers with notice. A recital in the deed to Hayes is a particular reference to the mortgage in which the notes are described as given for the purchase money. The case shows that Plettner also was fully notified. They successively bought with notice of plaintiff’s equity, and are bound by it precisely as was Mrs. Ogle.

Judgment for plaintiff.